UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JASON NEIL FLORES,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

Case No. 2:17-cv-1511-BAT

**ORDER AFFIRMING AND DISMISSING WITH PREJUDICE**

Jason Flores appeals the decision of the Administrative Law Judge (ALJ) finding him not disabled. He contends the ALJ erroneously 1) rejected the opinions of his treating, examining and reviewing providers (Shadrach, Meinz, Lewis, and Rivera); 2) rejected his subjective complaints; and 3) failed to include all limitations in the hypothetical to the vocational expert (VE). Dkt. 10 at 6. The Court finds the ALJ did not err and that his decision is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

On March 29, 2013, Mr. Flores filed an application for supplemental security income, alleging disability beginning December 20, 2009. The claim was denied initially on September 23, 2013, and again upon reconsideration on December 26, 2013. Mr. Flores filed a written

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 1

request for hearing on January 8, 2014 and appeared and testified at a hearing held on August 7, 2014. An Administrative Law Judge (ALJ) issued an unfavorable decision on September 19, 2014. Tr. 15 (Ex. B6A). Mr. Flores sought review by the Appeals Council. The Appeals Council vacated the hearing decision because it failed to evaluate the June 23, 2013 non-treating opinion of DSHS examiner Janis Lewis, Ph.D. (Ex. B6F), who indicated Mr. Flores can perform a reduced range of light work with limitations, which included the need to have a five minute break in addition to customary breaks. Tr. 220 (Ex. B7A). On remand, the ALJ was instructed to give further consideration to Mr. Flores' maximum residual functional capacity (RFC) and to obtain evidence from a VE to clarify the effect of the assessed limitations. *Id.* Mr. Flores appeared and testified at a second hearing held on November 8, 2016. Tr. 122-152. The relevant period for purposes of this application begins July 28, 2012.[1]

    Utilizing the five-step disability evaluation process,[2] the ALJ found that Mr. Flores had not engaged in substantial activity since March 29, 2013 and that he has the following severe impairments: obesity; hypothalmic benign tumor disorder, status post resection; hypopituitarisim; hypothyroidism; adrenal insufficiency; diabetes; major depressive disorder; cervical pain without clear etiology. Tr. 17. The ALJ also found that these impairments did not meet the Listings.[3] Tr. 19-20.

---

[1] Mr. Flores filed a previous application for supplemental security income payment on February 25, 2011. The application was denied at the initial and reconsiderations levels and, after a hearing, an ALJ issued an unfavorable decision on July 27, 2012. Ex. BIA. Mr. Flores did not seek further review and the decision was not reopened by the ALJ at the second hearing.

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 2

At step four, the ALJ found that through the DLI, Mr. Flores had the RFC to perform light work as defined in 20 CFR 416.967(b) except, he can frequently climb ramps and stairs, but never ladders, ropes, or scaffolds; he can frequently balance, stoop, kneel, crouch, and crawl; and can have occasional exposure to hazardous conditions such as proximity to unprotected heights and moving machinery; but is limited to tasks that can be learned in 30 days or less involving no more than simple work-related decisions and a few workplace changes; and can have occasional and superficial interaction with the public and co-workers. Tr. 21.

At step five, the ALJ relied on a VE, who testified that Mr. Flores could work as an assembler, basket filler, and egg sorter. Tr. 26.

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**A.     ALJ's Assessment of Medical Opinions**

To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id*.

1)     <u>Dr. Shadrach</u>

Dr. Shadrach examined Mr. Flores in September 2013 and prepared a psychological

assessment. Tr. 704-8. She stated Mr. Flores' concentration was poor and he suffered from depression and anxiety, which impacted his ability to adapt to routine changes in a typical work setting. Tr. 707. Based on Mr. Flores' statement that he was poor at money management, she recommended the agency assign him a representative payee. Tr. 707. Mr. Flores argues that the ALJ erred by not giving full weight to Dr. Shadrach's opinion; in particular, the need for a protective payee, that he has poor sustained concentration and persistence, working memory and concentration deficits, and is unable to adapt to routine changes in a typical work setting. Dkt. 10 at 12-13.

The ALJ assigned some weight to Dr. Shadrach's opinion and added a limitation to simple work-related decisions and few workplace changes to accommodate the doctor's concerns regarding anxiety and concentration:

> Dr. Shadrach examined the claimant in September 2013 and concluded that the claimant was able to get along with others, but that his depressed moods, increased anxiety, and poor concentration would impact his ability to adapt to routine changes in a typical work setting. Ex. B8F/4. I have assigned this opinion some weight. I limited the claimant to tasks that can be learned in 30 days or less and involving no more than simple work-related decisions and a few workplace changes. Such a limitation in the nature of the tasks, as well as the claimant's need to make only simple decisions a few workplace changes would address her concerns regarding anxiety and concentration. I have also limited his interaction with others. Given the claimant's history of obtaining a math degree and working for two years as a landscaper I do not find her conclusion that the claimant cannot adapt to even routine changes in a typical work setting consistent with the longitudinal history. Ex. B8F/2.

Tr. 24. Mr. Flores argues that relying on his ability to obtain a mathematics degree 15 years ago or working a short stint as a landscaper is hardly indicative of his ability to perform full time work or for rejecting his current symptoms. However, according to Mr. Flores, his depression manifested in 1995, at the same time as his cancer diagnosis. *See e.g.* Tr. 85, 705. Despite this,

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 4

he was able to complete his mathematics degree in 1998, *albeit* with lower grades, and work as a landscaper for two years. Tr. 47, 108, 705. An ALJ may reject an opinion identifying limitations, when the record shows that these limitations long predated the alleged disability period and did not prevent the claimant from performing work-like activities. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("Bayliss has faced these limitations since at least 1995, before her 1998 accident, and they have not prevented her from completing high school, obtaining a college degree, finishing a Certified Nurses' Aide training program, and participating in military training.").

Mr. Flores also contends that the ALJ erred in rejecting the impairments assessed by Dr. Shadrach because they are based on Mr. Flores' cognitive disorder, which causes him memory and concentration problems. Dkt. 14 at 2. While the ALJ noted that the state agency psychological consultants found a severe cognitive disorder, he did not find such a disorder established in the record and noted there is no diagnostic criteria to explain such an impairment. Here again, the ALJ noted that the pituitary tumor to which Mr. Flores attributes his impairments was removed in 1995 and three years later, Mr. Flores earned his advanced degree in mathematics. In addition, the ALJ noted that the State agency consultants assigned no more limitations in the "B" criteria or limited Mr. Flores' residual functional mental capacity more significantly than the ALJ had in his decision. Tr. 18. Moreover, in a mental status examination of Mr. Flores in September 2013, his treating physician David Jiminez Celi, M.D. concluded that Mr. Flores "displays ability to recall recent and remote events and fund of knowledge is intact and attention span and ability to concentrate are normal;" memory and orientation intact;" "he has no mental disability as he claims to have." Tr. 716-717. In a separate mental examination,

Ms. Blessings, a nurse, who was specifically testing Mr. Flores' memory because he had requested a transportation accommodation recommendation due to his alleged memory loss, found that Mr. Flores' memory was intact. Tr. 715.

Thus, it was not unreasonable for the ALJ to conclude that Mr. Flores could perform less mentally arduous work than pursuing a college degree – specifically, work that could be learned in 30 days or less, requiring only simple work-related decisions, and involving few workplace changes. Tr. 21.

2) Dr. Meinz

In May 2013, Rodger I. Meinz, Ph.D., performed a mental status evaluation (MSE). Mr. Flores argues that ALJ improperly rejected Dr. Meinz' opinion that Mr. Flores had many marked limitations in work related functioning. The ALJ assigned the checkbox DSHS form completed by Dr. Meinz less weight than that which he assigned to the opinion of Dr. Shadrach, because Dr. Shadrach performed a "much more thorough psychological evaluation, including memory testing" and Dr. Shadrach reviewed treatment notes.[4] The ALJ gave Dr. Meinz's opinion minimal weight because: (a) Dr. Meinz had not read any of Mr. Flores' medical records; (b) although Dr. Meinz noted slurred speech and short-term memory disturbance, these were not evident at the hearing and were contradicted by Dr. Shadrach's findings of "logical and coherent," speech, "clear" articulation (Ex. B8F/2), and average intellectual functioning; (c) it was not clear whether Dr. Meinz observed any symptoms or was merely relying on what was told to him by Mr. Flores; (d) Dr. Meinz diagnosed a cognitive disorder but did not administer

---

[4] The ALJ appears to have transposed the names of the doctors in this paragraph; however, it is clear from the context that he meant that Dr. Shadach's opinion was the more thorough evaluation as it was this evaluation to which he gave greater weight.

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 6

any testing and did not explain his diagnosis; (e) although the MSE included normal results in every area except memory (Ex. B2F/4-5), Dr. Meinz assigned limitations in every listed area (except for normal hazards and appropriate precautions ((Ex. B2F/3)), but did not explain why these limitations were necessary – and there were no medical records to support the limitations. Tr. 24-25.

"[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. The ALJ did not err in his treatment of Dr. Meinz's opinion. Dr. Meinz's failure to review any of Mr. Flores' medical records was significant because Dr. Meinz opined that Mr. Flores' cognitive disorder dated from 1995 and Dr. Meinz examination occurred in 2013. Tr. 667. In addition, although he administered no tests and indicated abnormal findings only as to memory tasks, Dr. Meinz assigned limitations in every functional area but offered no explanation for the limitations. The ALJ was not required to accept an opinion that was conclusory and inadequately supported by clinical findings. In addition, given that the abnormal findings Dr. Meinz observed were contradicted by the findings of both an examining psychologist (Dr. Shadrach) and a treating physician (Dr. Celi), the ALJ reasonably concluded the opinion was due little weight. *See Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) ("Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.").

Mr. Flores argues that the nature of psychological limitations are such that a psychologist must rely on some self-reporting to diagnose a condition. Dkt. 10 at 11. While it is true that

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 7

psychological assessments include self-reporting, they also include the use of mental status examinations – specifically, clinical findings. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Here, Dr. Meinz's opinion was almost entirely based on Mr. Flores' self-reported claims as the only irregular finding related to memory and that finding was not supported by clinical findings. Accordingly, the ALJ reasonably gave the opinion little weight.

3) <u>Dr. Lewis</u>

Mr. Flores argues that the ALJ erred in rejecting the opinion of non-examining psychologist, Dr. Lewis. Dkt. 10 at 13. In June 2013, Dr. Lewis submitted a checkbox report adopting Dr. Meinz's opinion. Tr. 697-99. The ALJ gave this report little weight, noting that the opinion was reliant on Dr. Meinz's opinion. Tr. 25.

Because Dr. Lewis' report relied entirely on Dr. Meinz's opinion, which was properly rejected, and Dr. Lewis reviewed no other evidence in the record, the ALJ reasonably rejected the opinion. *Bayliss*, 427 F.3d at 1216.

4) <u>Dr. Rivera</u>

In August 2012, Mr. Flores visited Dr. Rivera following treatment for kidney pain. Tr. 860-61. Dr. Rivera noted that "since pituitary removal patient has been experience [sic] multiple symptoms that impair his ability to drive. Patient will need long term disability due to multiple visual and medical impairments. Please give patient disability from 8/28/1-11/28/12…." Tr. 861-862. Mr. Flores returned to the clinic after this recommended period of disability, the recommendation was not renewed, and the treating physician noted that Mr. Flores was "in general doing well." Tr. 869-70. Mr. Flores argues that the ALJ erred when he failed to evaluate and assign weight to Dr. Rivera's opinion as Dr. Rivera was a treatment provider. Dkt. 10 at 13.

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 8

The ALJ noted that Mr. Flores was treated for a urinary stricture and subsequent urinary tract infection early in the period (Tr. 22 (citing Ex. B1F75, B13F61)). He also noted that Mr. Flores' medical records showed that the treatment was successful and by January 2013, Mr. Flores denied urinary symptoms (Ex. B13F/66, 69); in April 2013, he was urinating only two to three times per day (Ex. B1F/5); in May 2014 he denied any increased urinary frequency (Ex. B15F/1); in August 2014 when he alleged an increase in urination during the day, his medication was switched (Ex. B15F/11-12); in November 2014, Mr. Flores denied increased thirst or urination (Ex. B15F/16) and his physician recommended decreasing his dosage (Ex. B1OF/9); 2016 clinical notes indicate that urination during the day had slowed significantly and only one night time urination; and, in May 2016, Mr. Flores denied urinary difficulty entirely. Tr. 22-23. Thus, the ALJ did not find that the limitation given at the prior hearing relating to a need for extra breaks during the day was substantiated by the record as a whole and did not find extra breaks warranted based on the medical record. *Id.* at 23. Mr. Flores did not dispute this finding.

An ALJ's failure to discuss medical evidence is harmless when such evidence is not relevant to the disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) ("We have also affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion."); *see also Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (holding that an ALJ "need not discuss all evidence presented to her," but rather she must only explain why "significant probative evidence has been rejected."). Opinions regarding temporary disability or related to transitory medical conditions are not a basis for concluding a claimant is disabled. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

The disability period recommended by Dr. Rivera was only three months long and had no relevance to Mr. Flores' disability claim. Accordingly, it was not error for the ALJ to not refer to it specifically in his decision. *Carmickle*, 533 F.3d 1155, 1165.

**B.     Credibility Determination**

An ALJ's assessment of a claimant's credibility is entitled to "great weight." *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). The Ninth Circuit has repeatedly and consistently held that where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on "clear and convincing reasons." *Carmickle,* 533 F.3d at 1160 (citations omitted); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); *see* Social Security Ruling 96–7p (explaining how to assess a claimant's credibility), *superseded*, Social Security Ruling 16–3p (eff. March 28, 2016).[5]

At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). In evaluating the claimant's testimony, the ALJ may use "'ordinary techniques of credibility evaluation.'" *Turner v.*

---

[5] Social Security Rulings ("SSRs") are binding on the Administration. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). The appropriate analysis in the present case would be substantially the same under either SSR 96–7p or SSR 16–3p. *See R.P. v. Colvin*, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (observing that only the Seventh Circuit has issued a published decision applying Ruling 16–3p retroactively; also stating that Ruling 16–3p "implemented a change in diction rather than substance") (citations omitted); *see also Trevizo v. Berryhill*, 2017 WL 4053751, at *9 n.5 (9th Cir. Sept. 14, 2017) (SSR 16–3p "makes clear what our precedent already required.")

*Commissioner of Social Sec.*, 613 F.3d 1217, 1224 n. 3 (9th Cir. 2010) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, *id.*; "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment,'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284); and "whether the claimant engages in daily activities inconsistent with the alleged symptoms," *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).

Mr. Flores contends that the ALJ improperly rejected his testimony describing his symptoms and limitations in walking, fatigue, and mental functioning.[6] Dkt. 10 at 15.

1) <u>Walking</u>

Mr. Flores testified that he was limited in his ability to walk, *i.e.*, he was able to walk only a quarter of a mile (Tr. 52); he could not walk more than one block (Tr. 101); he struggled to walk 20 yards to his mailbox due to fatigue (Tr. 137-8).

Although Mr. Flores claimed to suffer from back, neck, and leg pain secondary to playing football in high school and college, making it difficult for him to "stand," (Tr. 44, 750), the ALJ found in his step two findings, that Mr. Flores had no medically determinable impairment as to his alleged leg, back, and neck pain. Dr. Phan noted that his cervical x-rays were normal (Tr. 750) and his lumbar spine imaging was completely normal, showing no degenerative changes (Tr. 746-47). "[A]n individual's symptoms, such as pain, … will not be found to affect the

---

[6] The ALJ also gave little weight to Mr. Flores' claims that his inability to work was impeded by his urinary frequency because this was inconsistent with the overall treatment record, but Mr. Flores does not challenge the ALJ's findings on this point.

individual's ability to do basic work activities … unless medical signs and laboratory findings show that there is a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptom(s) alleged." SSR 96-4p available at 1996 WL 374187. Because there was no evidence to support any impairment that would give rise to the pain symptoms of which Mr. Flores complains, it was not error for the ALJ to conclude that Mr. Flores had failed to demonstrate that he had a medically determinable impairment related to his reported neck, back, and leg pain nor was it error for the ALJ to fail to include them in the RFC. *See* SSR 96-8p, available at 1996 WL 374184 (noting that the RFC includes limitations from medically determinable impairments).

Additionally, both Dr. Phan and Dr. Hale concluded that Mr. Flores could stand and walk for six hours in an eight-hour day, which contradicted Mr. Flores' claims about his walking limitations and his claims that fatigue required him to rest two to three hours every two hours. Tr. 64-65, 141, 195-97, 750-58. On multiple physical examinations, despite claimed balance problems, Mr. Flores also had normal gait. Tr. 602, 676, 738, 752, 924. An ALJ may reject a claimant's testimony when it is contradicted by the medical opinions of record. *See Carmickle*, 533 F.3d at 1161 ("The ALJ also rejected Carmickle's testimony that he can lift only 10 pounds occasionally in favor of Dr. Patton's contradictory opinion that he can lift up to 10 pounds frequently. Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

The ALJ also noted that Mr. Flores' alleged walking limitations were contradicted by his statements to his medical providers. Tr. 23. Specifically, although he stated that he struggled to walk 20 yards to his mailbox, Tr. 137-38, he told his medical provider that he was walking half a

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 12

mile a day. Tr. 734. He was advised to "push hard" to increase his physical activity in order to offset potential weight-gain secondary to new medications. Tr. 735. An ALJ should consider whether an individual's statements to their medical providers is consistent with their claimed limitations. *See* SSR 16-3p available at 2017 WL 5180304.

Mr. Flores points to references in the medical records of difficulties with walking – Mr. Flores complained of walking hunched over and could not stand up as straight as previously (Tr. 529); Dr. Shadrach stated his activities of daily living were hindered by pervasive slowness and pain (Tr. 707); Dr. Meinz observed Mr. Flores walked and sat slumped over and had poor balance (Tr. 669); he stated Mr. Flores almost fell when trying to stand up (Tr. 669). However during his physical examination the next day, Mr. Flores had normal gait and station (Tr. 676). Moreover, Dr. Shadrach and Dr. Meinz are not medical doctors and therefore, are not qualified to opine as to Mr. Flores' physical functioning. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (noting medical opinion not entitled to weight when it "offers an opinion on a matter not related to [the physician's] specialization"); *see also Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) ("Although Dr. Bielefeld did opine that Buxton could not maintain employment, that opinion was based on Buxton's underlying physical conditions, which Dr. Bielefeld, as a psychologist, was not qualified to diagnose.").

The ALJ reasonably relied on Mr. Flores' examining physician and the state agency physician in concluding that he was able to walk at a "light" level.

2) <u>Fatigue</u>

Mr. Flores contends the ALJ also erred when he concluded that Mr. Flores was not credible in his complaints of fatigue because Mr. Flores was able to complete his mathematics

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 13

degree fifteen years earlier. He argues that obtaining a degree fifteen years ago is not a clear and convincing reason for rejecting his current symptoms. Dkt. 10 at 15. The mathematics degree however, was only part of the ALJ's analysis:

> The claimant also alleged that thyroid related fatigue also prevented his return to work. He testified that he had to lay down for two to three hours every two hours since his cancer diagnosis in 1995. Yet, neurology follow-up during the period at issue in this case includes imaging that demonstrated that the tumor was no longer visualized. Ex. Bl 5F/ l. I also note that the claimant was able to complete his mathematics degree after his surgery. The claimant testified at the most recent hearing that he is struggles walking even 20 feet to his mailbox, but he reported to his provider in May 2016 that he was walking half a mile per day. Ex. BlOF/3.
>
> Other factors may contribute to the claimant's sense of fatigue that are not attributable to his severe impairments, including his sedentary lifestyle and deconditioning. *See e.g.,* Ex. BlOF/3. I note that the claimant's treating physician has recently recommended that the claimant double his level of physical activity. Ex. BlOF/4-5. I also note that the claimant appears to exhibit poor sleep hygiene. For example, he testified that he napped during the day but was "up all night."

Tr. 23.

Thus, Mr. Flores attributes his fatigue symptoms to his 1995 cancer diagnosis, yet those symptoms did not prevent him from completing his college degree in 1998. Tr. 23, 101, 705. Because his fatigue symptoms were longstanding, the ALJ reasonably concluded that they would not prevent him from performing a limited range of work. *See Bayliss*, 427 F.3d at 1216. The ALJ also did not err in observing that other factors were contributing to Mr. Flores' fatigue, such as his sedentary lifestyle and poor sleep hygiene. Tr. 23. In 2016, Mr. Flores' treating physician noted that he had a "sedentary lifestyle" and advised him to "push hard" to be more active and lose weight. Tr. 734-35. Limitations attributable to lifestyle are not disabling. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) ("[T]o the extent that the claimant's activities of daily living are limited, they are self-limited. This is pointed out by Dr. Schayes, the medical expert,

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 14

who has indicated that the claimant's current restriction of activities of daily living are a lifestyle choice.").

3. Mental Functioning

Mr. Flores testified that he had poor memory and concentration, needing reminders to perform everyday tasks. Tr. 54, 85-86, 98. He contends the ALJ erred in concluding that his statements about his mental symptoms and limitations were not consistent with the record. Dkt. 10 at 16. He states the ALJ again improperly referred to the 15 year old mathematics degree, faulted him for not obtaining mental health treatment, failed to consider the supporting testimony of Dr. Shadrach, Dr. Meinz, and Dr. Lewis, and improperly relied on a statement by Latasha Blessings, who was treating him for testosterone injections. *Id.* The ALJ found as follows:

> Additionally, the degree of mental limitation the claimant alleges is not consistent with the longitudinal history. The claimant alleges significant cognitive compromise, yet, was able to attain an advanced degree in mathematics. He underwent his surgery in 1995, three years before he attained his degree. He alleges no subsequent head injury or any other explanation for such [sic] his purported cognitive decline. He has also felt no need to seek any form of assessment or treatment. He did request that one of his clinicians complete a form qualifying him for free transportation based on mental allegations, but the clinician refused, as examination was not consistent with the claimant's allegations of memory loss and confusion. Ex. B9F/6. In fact, examination was unremarkable and memory and orientation were intact. Other mental examinations were similarly normal. *See,* Ex. B9F/7.

Tr. 23. As previously noted, because Mr. Flores claimed that his memory impairments arose following his 1995 cancer diagnosis and treatment, it was not unreasonable for the ALJ to note that these limitations had not prevented him from completing an advanced mathematics degree and performing other work following that diagnosis and treatment. It was not error for the ALJ to conclude that based on these activities, Mr. Flores could perform the work identified in the RFC. Tr. 21, 23. *See Bayliss*, 427 F.3d at 1216.

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 15

In addition, it was not error for the ALJ to conclude that the memory impairments claimed by Mr. Flores were not reflected in his treatment record. Tr. 23. Specifically, Mr. Flores twice sought a transportation accommodation based on alleged memory loss. Tr. 715-17. His treating physician, Dr. Celi, declined, noting that a MSE demonstrated that his recent and remote recall were normal, as was his concentration and attention. Tr. 716. Mr. Flores' memory was "intact." Tr. 717. In a separate mental examination, Ms. Blessings, a nurse, who was specifically testing Mr. Flores' memory because he had requested a transportation accommodation recommendation due to his alleged memory loss, found that Mr. Flores' memory was intact. Tr. 715. This was not error. *See,* 20 C.F.R. § 404.1529(c)((2) (objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of symptoms.)

The Court finds that these were legally sufficient reasons on which the ALJ could properly rely to support an adverse credibility determination. The Court therefore defers to the ALJ's credibility determination. *See Lasich v. Astrue*, 252 Fed.Appx. 823, 825 (9th Cir. 2007) (court will defer to Administration's credibility determination when the proper process is used and proper reasons for the decision are provided); *accord Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995).

**C.     Step Five Vocational Analysis**

Mr. Flores argues that because the ALJ's hypothetical failed to account for all the limitations set forth by Dr. Shadrach, Dr. Meinz, Dr. Lewis, and Dr. Rivera, the ALJ's reliance on the VE's response to the hypothetical was without evidentiary value. Dkt. 10 at 18. "If the hypothetical does not reflect all the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the

national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (citing *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988)).

As discussed herein however, the ALJ properly evaluated the medical evidence. Thus, Mr. Flores' argument that the ALJ's step five finding is incomplete is not persuasive. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (upholding the step five finding where the claimant's argument that the hypothetical was incomplete "simply restates her argument that the ALJ's [residual functional capacity] finding did not account for all her limitations").

**CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this case with prejudice.

DATED this 14th day of March, 2018.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER AFFIRMING AND
DISMISSING WITH PREJUDICE - 17